**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMAR CARDWELL, )
)
              Plaintiff, )     Civil Action No. 2:23-cv-354
)
      v. )
)     Magistrate Judge Patricia L. Dodge
SUPERINTENDENT LEE ESTOCK, *et al.*, )
)
           Defendants. )

**MEMORANDUM OPINION[1]**

Plaintiff Jamar Cardwell, who is an inmate in the custody of the Pennsylvania Department of Corrections at SCI Somerset, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as defendants in their individual capacities are Superintendent Lee Estock, Mr. Sheeder, Mr. Nunez, John E. Wetzel, Z. Moslak, Judy Smith, Lt Box, Officer Pavlosky, Mr. Yingling, Sargeant Anderson, Officer Henrickson, Ms. Mottin, and Sargeant Pavelek, all of whom are employees of the Pennsylvania Department of Corrections.

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 59.) For the reasons below, the motion will be granted in part and denied in part.

**I.    Procedural History**

After Plaintiff initiated this action in March 2023 and the Complaint was docketed (ECF No. 6), Defendants filed a motion to dismiss. (ECF No. 28.) Plaintiff then submitted an Amended Complaint, the operative pleading. (ECF No. 52.) Defendants' Motion to Dismiss the Amended

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

Complaint and a brief in support followed. (ECF Nos. 59 and 60.) Plaintiff filed a brief in opposition to the motion. (ECF No. 69.) Thus, the motion is ripe for disposition.

## II.     <u>Overview of Factual Allegations</u>

Plaintiff's claims arise out of events alleged to have occurred between February and November 2019 when he was an inmate at the State Correctional Institution at Pine Grove. Plaintiff does not provide a series of factual allegations in the Statement of Claim section of his Amended Complaint. Instead, he lists each Defendant and sets forth the claims that he asserts against each accompanied by minimal facts.[2] That said, the Court discerns the following general outline of the alleged events.

The allegations in the Amended Complaint stem from an alleged sexual assault of Plaintiff by Officer Paulosky. (ECF No. 52 at 7.) Plaintiff evidently reported Paulosky pursuant to the Prison Rape Elimination Act ("PREA") and was allegedly subsequently met with widespread retaliation, harassment, and "systemic collusion." (*Id.* at 7-10). Plaintiff further alleges that because of a false disciplinary charge for threatening Paulosky, he was sent to the Restrictive Housing Unit ("RHU"). (*Id.* at 7.)

The role that each of the thirteen Defendants is alleged to have played will be discussed below.

## III.    <u>Legal Standard</u>

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a

---

[2] Plaintiff refers to additional facts in his response to the instant motion, but they cannot be considered here. It is well established that a plaintiff cannot amend a complaint through briefs. *See Dongelewicz v. PNC Bank Nat'l. Ass'n.*, 104 Fed. Appx. 811, 819 n.4 (3d Cir. 2004) (quoting *Williams v. New Castle County*, 970 F.2d 1260, 1266 n.4 (3d Cir. 1992)) ("'a contention in a brief' clearly ... may not 'be used to 'substitute for an allegation in a complaint.''").

court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

The Supreme Court has stated that "the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

The majority of Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not itself create any substantive rights; it simply provides a cause of action that allows the plaintiff to vindicate rights that have already been secured. *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

Under 42 U.S.C. § 1983, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who

"subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g.*, *id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, supervisor-defendants cannot be held liable for every illegal act that takes in a correctional facility. They are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the

subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

## IV.  <u>Analysis</u>

Plaintiff alleges multiple claims against each Defendant, some of which are not civil causes of action, others of which are not actionable, and most of which are unrelated to the limited factual allegations he has made against each Defendant.

Defendants move for the dismissal of all claims asserted by Plaintiff. They set forth two principal bases: (1) failure to allege sufficient personal involvement of Defendants Estock, Smith, Yingling, Nunez, Wetzel, Anderson, Henrickson, Mottin, and Moslak in any alleged constitutional violation; and (2) failure to allege sufficient facts to establish plausible constitutional claims, state-law claims, or an ADA violation.

First, the Court also notes that some causes of action that Plaintiff tries to assert are criminal, not civil, matters and cannot be raised in this case. This includes attempted murder, theft, indecent sexual assault[3] and stalking. In addition, "mental injury" relates to damages and does not represent a separate claim. Similarly, while they may be an element of a claim, "recklessness" and "outrageous conduct" are not recognized causes of action.[4] Accordingly, all such claims will be dismissed with prejudice.

The Court now proceed to separately evaluate the allegations against that Defendant in order to determine whether these allegations support any plausible claim. *See* 42 U.S.C. §

---

[3] While Plaintiff can allege that a sexual assault violated his Eighth Amendment rights, there is no separate civil claim for sexual assault.

[4] To be clear, Plaintiff can allege that certain conduct was reckless or outrageous in the context of an established cause of action.

1915A(b)(1) (mandating dismissal of a complaint via the screening powers of the Court if it fails to state a claim). In large measure, as outlined below, Plaintiff has failed to set forth sufficient facts to support the multiple claims he has asserted against each Defendant. Moreover, a number of the causes of action cited by Plaintiff are either unsupported or do not represent a cognizable claim.

A.    Estock

Plaintiff's claims against Estock are described as "defamation of character, violation of due process, deliberate indifference, failure to intervene, conspiracy/collusion, Retaliation against victim or party, violated right to freedom of speech, abuse of authority, D.O.C. policy, code of ethics, False reports to law enforcement authorities[,] Tampering with public records, information official oppression[,] obstruction of justice[, and] mental injury" (ECF No. 52 at 14.) These claims are inadequately supported by the facts that are pleaded.

Plaintiff alleges in part that Estock, the Superintendent of SCI Pine Grove, failed to overturn Plaintiff's misconduct, which he alleges was based on a false charge. (*Id.* at 7.)  An official's participation in a prison's administrative appeal process does not establish that official's personal involvement in the underlying alleged constitutional violation. *Holden v. Wetzel*, 2021 WL 1090638, at * 15 (W.D. Pa. Mar. 22, 2021); *Hennis v. Varner*, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014) ("participation in a prison's ... misconduct and prison review committee appeals [ ] is [ ] insufficient [ ] for personal involvement"). *See also Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right.").

Because the factual allegations of Estock's role in the alleged false misconduct are limited to his review of Plaintiff's appeal, Plaintiff has failed to establish Estock's personal involvement

in any constitutional violation. Accordingly, Plaintiff's claim about Estock's failure to overturn his misconduct will be dismissed.

The only other assertion against Estock is that he "often downplayed retaliation, death attempts, and harassment, systematic collusion." This bare conclusory statement is not supported by any factual basis and is therefore insufficient to support the many claims asserted in a summary fashion by Plaintiff.

Accordingly, all claims against Estock will be dismissed.

B.    Sheeder

Plaintiff alleges claims against Sheeder for "defamation of character, HIPAA violation, obstruction of Justice, perjury, and falsification in official matters, false swearing, tampering with public records or information, retaliation against witness, victim or party[,] violations of DOC policy and ethics, conspiracy/collusion, abuse of authority, outrageous conduct, Intentional infliction of emotional distress, deliberate indifference, [and] mental injury." (ECF No. 52 at 15.)

In support of these claims, Plaintiff alleges that Captain Sheeder conspired to "eliminate threat to institution and to D.O.C." He states that in collusion with Lt. Box, he placed Plaintiff in the RHU for a threat he did not make. (*Id.* at 7.) He also alleges that Sheeder said the video footage was not clear to prove sexual assault by Paulosky and that he covered up Paulosky's harassment of Plaintiff after the assault even though Plaintiff asked for separation. (*Id.*)

Plaintiff asserts claims of conspiracy and "collusion." In order to support a conspiracy claim under § 1983, a plaintiff must allege sufficient facts from which a conspiratorial agreement to deprive the plaintiff of a constitutional right can be inferred. *LeBlanc v. Stedman*, 483 Fed. Appx. 666, 670 (3d Cir. 2012); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010) (holding that a § 1983 conspiracy claimant must plead specific

facts addressing the time the agreement was made, the period of the conspiracy, the parties to the agreement, and the object of the conspiracy). Conclusory allegations of an agreement are insufficient. *Weir v. Univ. of Pittsburgh*, 2023 WL 3773645, at *3 (3d Cir. June 2, 2023) (finding dismissal of conspiracy claim to be proper where plaintiff made only conclusory statements of the existence of a conspiracy without factual allegation to support that conclusion). Thus, Plaintiff's claim of conspiracy is insufficiently pleaded.

Moreover, as Defendants correctly assert (ECF No. 60 at 8), there is no cause of action for violations of DOC policy. Prison policies and regulations do not have the force of law and if violated, are not actionable under 42 U.S.C. § 1983. *Bullard v. Scism*, 449 Fed. Appx. 232, 235 (3d Cir. 2011) (allegations that prison regulations are violated are not actionable); *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Mar. 26, 2008) (collecting cases). *See also United States v. Fattah*, 858 F.3d 801, 813-14 (3d Cir. 2017) (citing *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010) in finding that a "violation of internal policy alone does not amount to a violation of constitutional due process" because government policies and guidelines "do not themselves create rights").

To the extent that Plaintiff is alleging that Sheeder executed disciplinary punishment for a misconduct of which Plaintiff was found guilty, this does not support any claim of wrongdoing. Although Plaintiff alleges the misconduct was unfounded, he does not allege that Sheeder knew it to be false or retaliatory. Further, the allegations of Sheeder "covering up" harassment of Plaintiff are too vague to support any plausible claim.

In short, Plaintiff has failed to allege any facts to support any of the many causes of action he has asserted against Sheeder. Accordingly, the claims against Sheeder will be dismissed.

C.    <u>Nunez</u>

Against Nunez, Plaintiff asserts claims of "defamation of character, intentional infliction of emotional distress[,] cruel and unusual punishment, official oppression, abuse of authority, conspiracy[,] collusion, violation of D.O.C. policy, and code of ethics, retaliation against witness[,] victim or party, deliberate indifference[,] outrageous conduct[,] Abuse of a care dependent person, [and] mental injury." (ECF No. 52 at 14.)

In support of these claims, Plaintiff alleges that Nunez, a hearing examiner, demonstrated "systemic collusion" and improperly found Plaintiff guilty of making a threat. He asserts that Nunez did so not because Plaintiff was guilty, but because "they Lee Estock needed [Plaintiff] out of SCI Pine Grove." (*Id.* at 8-9.) He also alleges that Nunez stated there was audio of Plaintiff making the threat, but he did not let Plaintiff hear it. (*Id.* at 8.)

To the extent that Plaintiff is asserting procedural irregularities in the hearing process, the United States Court of Appeals for the Third Circuit has explained that "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011). The Supreme Court has recognized that states, "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Mere placement in the RHU is not such a restraint. *See Laake v. Mooney*, 2022 WL 17976326, at *6 (W.D. Pa. Dec. 28, 2022). Accordingly, Petitioner cannot raise a due process claim on this basis.

Further, to the extent that Plaintiff asserts a conspiracy claim against Nunez for finding him guilty because Estock "needed him out," this bald conclusion is not enough to show the existence of a conspiratorial agreement between Nunez and Estock.

Therefore, the claims against Nunez will be dismissed.

D.    Wetzel

Plaintiff asserts claims against Wetzel of "cruel and unusual punishment, conspiracy/collusion[,] failure to intervene, negligence, obstruction of justice, due process[,] deliberate indifference. [and] mental injury." (ECF No. 52 at 14.)

Plaintiff alleges that Wetzel, the Secretary of the Department of Corrections, never responded to Plaintiff's appeals to him concerning wrongdoing and his misconduct. (*Id.* at 9.) These allegations cannot establish Wetzel's personal involvement in any constitutional violation. As discussed above, an official's participation in a prison's administrative appeal process does not establish that official's personal involvement in the underlying alleged constitutional violation. Indeed, allegations of personal involvement after the fact (for example, by denying a grievance or having received a complaint) are insufficient to give rise to a claim under § 1983. This is so because the failure to investigate alleged misconduct after it has occurred does not state a plausible claim that a defendant had any personal involvement in the alleged misconduct. *Robinson v. Delbalso*, 2022 WL 17248100, at *2 (3d Cir. 2022) (explaining that awareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred is not enough to establish personal involvement).

For these reasons, the claims against Wetzel will be dismissed.

E.     Moslak

Plaintiff's causes of action against Moslak are for "violation of due process, conspiracy/collusion, deliberate indifference[,] cruel and unusual punishment[,] violation of freedom of speech[,] failure to intervene, abuse of authority and D.O.C. policy, obstruction[,] mental injury, [and] obstruction of justice." (ECF No. 52 at 14.)

The sole support for these claims is the allegation that Moslak, the Chief Hearing Examiner, "is supposed to check to see if any errors are made during the misconduct process," but he never responded to Plaintiff's final appeal. (*Id.* at 10.)

As explained above, because the allegations of Moslak's role is limited to his review of Plaintiff's disciplinary appeal, Plaintiff has failed to establish Moslak's personal involvement in any constitutional violation.

Accordingly, the claims against Moslak will be dismissed.

F.     Smith

Plaintiff's claims against Smith include "defamation of character, abuse of authority, violation of DOC policy and ethics, conspiracy, collusion, obstruction of justice, theft, cruel and unusual punishment, retaliation against witness victim or party, Intentional infliction of emotional distress, outrageous conduct[,] mental injury." (*Id.* at 15.)

In support of these claims, Plaintiff alleges that Smith, the Assistant Superintendent and Grievance Coordinator at SCI Pine Grove, failed to follow prison policy in her administration of grievances. He also alleges that Smith gave him a "false address" when he was waiting for property to arrive from SCI Camp Hill instead of making a phone call to ask about his property. (*Id.* at 8.)

As discussed above, a violation of DOC policy is not a basis for relief. Accordingly, this allegation against Smith fails to establish a plausible claim.

As to the second allegation concerning her role in recovering Plaintiff's property from SCI Camp Hill, the allegations are simply too vague to support any plausible claim.

The claims against Smith will be dismissed.

G.    Box

The claims against Box include "defamation of character, HIPAA violation, obstruction of Justice, perjury and falsification in official matters, false swearing, tampering with public records or information, retaliation against witness, victim or party[,] violations of DOC policy and code of ethics, conspiracy/collusion, Abuse of authority[,] outrageous conduct, Intentional infliction of emotional distress[,] deliberate indifference, [and] mental injury." (*Id.* at 15.)

In support of these claims, Plaintiff alleges that Box, a security lieutenant, colluded in an unspecified way with Sheeder; stole mail that Plaintiff wrote "to P.R.E.A.," forged Plaintiff's name on a different envelope and resent it; and illegally attended Plaintiff's misconduct hearing where he testified that there was audio evidence of Plaintiff's making a threat that he did not make. (*Id.* at 7.)

As discussed, the allegations of conspiracy and collusion are too vague to support a claim. Further, the irregularities at the disciplinary hearing are also insufficient to support a claim under § 1983.

As to the allegation that Box "stole mail" concerning Plaintiff's PREA claim, a pattern and practice of interfering with a prisoner's legal mail impinges upon the prisoner's First Amendment rights. *Frazier v. Kuhn*, 2025 WL 1895542, at *2 (3d Cir. 2025). While isolated incidents of the same are generally not enough to establish a First Amendment violation, if there is evidence of an improper motive, a constitutional violation may be established. *Folk v. Bureau of Prisons*, 2020 WL 3304132, at *1-2 (M.D. Pa. June 18, 2020) (collecting cases). Here, Plaintiff has alleged only

a single incident, but his allegations and the reasonable inferences from it are sufficient to establish a plausible claim that Box acted with an improper motive in interfering with Plaintiff's legal mail. Accordingly, this claim will proceed.

All other claims against Box will be dismissed.

H.    <u>Pavlosky</u>

Against Pavlosky, Plaintiff asserts claims of "defamation of character for conspiracy to a threat I never made towards him, retaliation [] for using my right to freedom of speech, Indecent sexual assault, sexual har[]assment, outrageous conduct, deliberate indifference, retaliation against witness victim or party, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, recklessness, Abuse of a care dependent person, abuse of authority, stalking, Abuse of D.O.C. policy[, and] mental injury." (ECF No. 52 at 14.)

Plaintiff does not allege any facts that sufficiently describe the circumstances of the alleged sexual assault; he only alleges that it happened while Paulosky, a corrections officer, was supposed to be doing body searches after a power outage and that Paulosky made "some type of racial slur" towards Plaintiff and told Plaintiff he would get away with it. (*Id.* at 7.) Plaintiff finally alleges that after he reported the assault, Paulosky "harassed" him multiple times. (*Id.*)

None of these allegations establish a plausible claim against Paulosky. First, racial slurs and epithets, on their own, fail to establish liability under section 1983. *Mugavero v. Town of Kearny*, 2013 WL 3930120, at *3 (D. N.J. July 30, 2013) (collecting cases).

While Plaintiff has a right to be free from sexual assault by prison officials, he does not allege facts which, if accepted as true, support the finding of such an assault. He asserts only the legal conclusion that a sexual assault occurred. This assertion fails to state a claim because it lacks sufficient factual allegations.

Similarly, Plaintiff has a right to be free from adverse actions done in retaliation for exercising his constitutional right to report an assault, but Plaintiff fails to allege facts which, if believed, would support a finding that he suffered adverse action. He asserts only the legal conclusion that undefined "harassment" occurred. This assertion in insufficient.

The claims against Paulosky will be dismissed.

I.    Yingling

Against Yingling, Plaintiff asserts claims of "due process, failure to interevene, conspiracy/collusion, obstruction of justice, defamation of character[,] violation of D.O.C. policy and code of ethics[,] tampering with public records or information, cruel and unusual punishment[,] deliberate indifference[,] obstruction of justice, [and] mental injury." (ECF No. 52 at 14.)

Plaintiff alleges that Yingling, the Corrections Classification Program Manager (PREA), colluded with Smith to violate Plaintiff's "rights" under DOC policy. (*Id.* at 8.) Plaintiff also alleges that "it[']s defamation of character because the John Doe officer was doing illegal cell inspections and all my grievances were about the same thing the security cell inspection he did." (*Id.*)

As addressed above, there is no cause of action for violation of DOC policy. As to the facts about cell inspections, the allegations are too vague to support any plausible claim.

Accordingly, the claims against Yingling will be dismissed.

J.    Anderson

Plaintiff asserts claims against Anderson of "defamation of character, conspiracy/collusion, violations of DOC policy and ethics[,] violation of freedom of speech,

deliberate indifference, cruel and unusual punishment, retaliation against witness victim or party, Intentional infliction of emotional distress, outrageous conduct[, and] mental injury." (*Id.* at 15.)

In support of these claims, Plaintiff alleges that Anderson, a sergeant, would "create[] scen[a]rios with his friends through collusion telling [Plaintiff] to go somewhere" which led to Plaintiff entering unauthorized areas. (*Id.* at 9.) Plaintiff further alleges that Anderson made "false reports that led to misconducts that I had to go in front of Mr Nunez for like having a piece of cake when I didn't." (*Id.*)

These allegations are too vague to support any of the causes of action Plaintiff has asserted against Anderson. Accordingly, the claims against him will be dismissed.

K.    Henrickson

Against Henrickson, Plaintiff asserts claims of "defamation of character, conspiracy/collusion, violation of D.O.C. and ethics policy, deliberate indifference, retaliation against witness, victim, or party[,] violation of freedom of speech, [and] mental injury." (*Id.* at 15.)

In support of those claims, Plaintiff alleges only that after Henrickson, a corrections officer, learned of the alleged sexual assault of Plaintiff, he ridiculed Plaintiff and made no accommodations for Plaintiff's unspecified injury. (*Id.* at 9.) These allegations are too vague to support any plausible claim for relief.

The claims against Henrickson will be dismissed.

L.    Mottin

Against Mottin, Plaintiff asserts claims of "defamation of character, conspiracy/collusion, failure to intervene[,] deliberate indifference[,] retaliation, obstruction of justice, tampering with evidence[,] conspiracy to attempted murder, cruel and unusual punishment, violation of due process and freedom of speech, mental injury, ADA violation seizure disorder." (*Id.* at 15.)

In support of those claims, Plaintiff alleges that Mottin, a unit manager, "covered up an attempted murder by getting rid of documents that would [have] proved guilt and making provisions so it wouldn't happen again, she allowed for SGT Pavelek to write block cards that le[]d to misconducts that he wasn't allowed to write he had to be there and it had to happen to him. She tried to punish me for a piece of cake that I never had I was searched and it was not on me as soon as Sgt Anderson said someone gave it to me but when I came to her about staff all she ever did was provide me with handicap shower there." (*Id.* at 10.)

Because the allegations against Mottin are unintelligible, they do not support any plausible claim against her.

As it relates to Plaintiff's ADA claim, under the ADA, no qualified individual with a disability may be excluded from participation in the programs of a public entity because of his disability. 42 U.S.C. § 12132. Defendants correctly argue that Plaintiff fails to allege any factual support for a claim under the ADA. (ECF No. 60 at 15). He does refer to a "seizure disorder," but provides no other relevant information. In any event, there can be no cognizable ADA claim against any of the Defendants in their individual capacity. *See*, *e.g.*, *Matthews v. Pennsylvania Dep't of Corr.*, 613 Fed. Appx. 163, 170 (3d Cir. 2015) ("Title II of the ADA does not provide for suits against state officers in their individual capacities."). Accordingly, any ADA claims will be dismissed with prejudice.

The claims against Mottin will be dismissed.

M.      Pavelek

Finally, against Pavelek, Plaintiff asserts these claims: "defamation of character, conspiracy/collusion, violations of DOC policy and ethics[,] violation of freedom of speech, deliberate indifference, cruel and unusual punishment, retaliation against witness victim, or party,

attempted murder, negligence of a care dependent person[,] Intentional infliction of emotional distress, outrageous conduct, mental injury, ADA violation seizure disorder." (*Id.* at 15.)

In support of those claims, Plaintiff alleges that Pavelek, a sergeant, "illegally block carded" Plaintiff for a loud outburst he did not witness and then made a false report about why he did so. (ECF No. 52 at 10.) Plaintiff also alleges that he asked Pavelek for medical attention and got no response, and then suffered a seizure and passed out. (*Id.*)

The allegations concerning the "block card" are insufficient to support any plausible claim. However, the allegations that Pavelek failed to response to Plaintiff's request for medical attention, although somewhat sparse, can establish a plausible claim for deliberate indifference.

As held by the Supreme Court, the Eighth Amendment prevents prison officials from acting with deliberate indifference to prisoners' serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "In order to establish a violation of [a prisoner's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Estelle*, 429 U.S. at 103-04 (other citation omitted). As addressed by the Third Circuit, a serious medical need has two components: the inmate's condition "must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death"; and a condition diagnosed by a physician as either requiring treatment or so obvious that a lay person would recognize the need for medical attention. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). *See also Monmouth Cnty Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In addition, as discussed above, Plaintiff has failed to state a claim under the ADA.

Thus, all claims against Pavelek will be dismissed except for the deliberate indifference claim.

## V.    **Amendment**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

As discussed above, certain claims will be dismissed with prejudice: all ADA claims; all claims related to the grievance process and related appeals; all claims related to alleged violations of "DOC policy and ethics"; and claims of attempted murder, theft, indecent sexual assault, and stalking. In addition, as mental injury, recklessness, and outrageous conduct are not causes of action, they will also be dismissed with prejudice to the extent Plaintiff has attempted to include them as distinct causes of action against any of the Defendants.

As to the remaining claims, the Court cannot conclude that it would be futile or inequitable to permit Plaintiff to file a second amended complaint to remedy the deficiencies identified here. However, if Plaintiff does not elect to file a second amended complaint, this action will proceed only as to the First Amendment claim against Defendant Box with respect to his alleged interference with Plaintiff's legal mail and the Eighth Amendment claim against Defendant Pavelek with respect to his alleged failure to respond to Plaintiff's request for medical attention.

Plaintiff is advised that if he elects to file a second amended complaint, it will completely replace the Amended Complaint. As a result, it must include all defendants and claims he wishes to assert in this action, aside from those that have been dismissed with prejudice. Sufficient facts must be asserted to support each claim asserted.

18

**VI.**    <u>**Conclusion**</u>

For these reasons, Defendants' Motion to Dismiss will be denied as to the First Amendment claim against Box with respect to his alleged interference with Plaintiff's legal mail and the Eighth Amendment claim against Pavelek with respect to his alleged failure to respond to Plaintiff's request for medical attention.

The motion will be granted with prejudice as to all ADA claims; all claims related to the grievance process and related appeals; all claims related to alleged violations of "DOC policy and ethics"; all claims of attempted murder, theft, indecent sexual assault, and stalking; and all causes of action described as mental injury, recklessness, and outrageous conduct.

In all other respects, Defendants' motion will be granted without prejudice and with leave to amend.

An appropriate Order follows.


Dated: August 25, 2025                    /s/ Patricia L. Dodge
                                          PATRICIA L. DODGE
                                          UNITED STATES MAGISTRATE JUDGE